# Durr, *et al. v.* Wilson, *et al.*

*Bill in Equity to compel the Determination of Claim to Real Estate.*

1. *Trusts; misapplication of trust fund; right of beneficiaries and purchasers under trust deed, upon the exercise of the power of sale.*—A testator devised to his sons and daughters certain real estate; the interest devised to the sons being without limitation, and his daughters were to have a life estate, with remainder over to their children, in the portions devised to them. The husband of one of the daughters purchased part of the land allotted to one of the sons, using his own money in payment thereof, and subsequently conveyed said land in trust, the consideration expressed in the trust deed being a sum of money received by him from the executor of his wife's deceased ancestor, and belonging to his wife under the will as her sole and separate estate, which said sum of money he had applied to his own use. The land was conveyed to the trustee for the wife of the grantor with remainder to such child or children, and the descendants of such child or children as the wife might have living at the time of her death; and by the deed of trust, the trustee was to pay the rents and profits from the land, unless disposed of under the power of sale given in the deed, to the sole and separate use of the wife during her life, and upon her death, if said land had not been sold under the power given in the deed, then to convey it to such child or children, and the descendants of such child or children as the wife might have living at the time of her death. The trust deed contained a power of disposition authorizing the trustee, by the written direction and request of the wife, to sell and re-invest the proceeds, and it was declared therein that the rights of her children as remaindermen should

[Durr, *et al.* v. Wilson, *et al.*]

attach only in the event that the land had not been sold under the power of sale. *Held*: That the husband having paid his own money in the purchase of the land from the son of the testator, and no portion of the trust estate under the will having entered into its purchase, neither the life tenant nor the remaindermen under the will had any lien upon the property itself, and a purchaser from the trustee in the deed by the husband under a sale as directed therein, acquires an absolute title to the land, free from any trust in favor of the wife as life tenant, or her children as remaindermen, under the will; the liability of the husband for the trust fund misapplied by him being that of a mere debtor, and he having the absolute right to dispose of the land.

2. *Trust and trustee; rights of beneficiaries and purchaser upon the sale of land under the power of disposition.*—Where land is conveyed to a trustee upon the trust that he would pay the rents and profits therefrom to the wife of the grantor during her life, and on her death convey the land to her children, if it had not been previously sold under the power of disposition contained in the deed, if the land is sold during the life of the life tenant, in compliance with the power of sale, the purchaser at such sale takes the land free from any trust in favor of the children, and acquires the entire legal and equitable estate therein.

APPEAL from the City Court of Montgomery, in Equity. Heard before the Hon. JOHN G. WINTER.

This was an appeal from a decree of the judge of the city court sitting as chancellor, decreeing that appellees who were defendants to a bill filed by the appellants, were entitled as remaindermen under the will of their ancestor, to certain property; and the rendition of this decree is here assigned as error. The facts of the case are sufficiently stated in the opinion.

LESTER C. SMITH, JOHN M. CHILTON, and HORACE STRINGFELLOW, for appellants.—1. Where no part of the trust fund is used in the purchase of the property from one who has absolute title, no trust can be fastened upon the property so purchased; and the liability of the one who purchased such land for the mis-appropriation of such funds, which had come into his possession, is simply that of debtor. In this case it appears that no part of said fund was used by said Wilson in the purchase of said property from the son of said George R. Clayton. No trust, therefore, could have been fastened by said remaindermen upon said property in his hands. His liability to them for its conversion stands upon the

same footing as a mere debt.—*Ellison v. Moses*, 95 Ala. 228; *Goldthwaite v. Ellison*, 99 Ala. 497; *Goldthwaite v. Janney*, 102 Ala. 441; *Milner v. Stanford*, 102 Ala. 280; *Farris v. Stoutz*, 78 Ala. 133.

· 2.  It is clear that the appellees having no lien upon the debtors' property, and not being able to trace their funds into its purchase by him, they had no right to restrain its alienation by him.  The right of transfer by a debtor is "a necessary incident to the right of property itself and rests on the same foundation with the absolute right to acquire and enjoy, and its exercise, when the subject of it is free from the claims of others, is placed under no other restriction than such as the policy of the law has imposed" (the statutes relating to fraudulent conveyances and general assignment).—Burrell on Assignments, § 9.  The creditor to whom a debtor may make a conveyance in satisfaction of his debt, may either accept or reject it.  He may have rights with which the deed, so far as it confers rights upon others, is inconsistent.  But, if he accepts it, he must take it as an entirety; he can not accept it in part and reject it in part.— *Hatchett v. Blanton*, 72 Ala. 423; *Dillon v. Parker*, 1 Swanston, 359 and notes; 1 Leading Cases in Equity (White & Tudor), p. 570; 2 Perry on Trusts, § 596; *Sloan v. Frothingham*, 72 Ala. 589; *Pratt v. Adams*, 7 Paige 615; *Leinkauff v. Forcheimer & Co.*, 87 Ala. 258.  So, in this case, Wilson, the debtor, in conveying his property, then unincumbered by lien or trust, in payment of his debt to his wife, had the right to convey it to her, or to a trustee, and upon such terms as "his pleasure, interest or even caprice might dictate."  The creditor, his wife, might accept or reject it.  Until she did accept it, it was recoverable by the grantor, but if she accepted it she had to take it in its entirety, and could not accept it in part and repudiate it in part.  While the remaindermen are not bound by her election, and had themselves the right to elect before, or upon the death of the life tenant, and the accrual of their interest in the fund, they have no greater rights than their mother had.  They must accept or reject the deed in its entirety, they can not accept it in part and reject it in part.

THOS. H. WATTS, *contra.*—1.  The money of Amanda L. Wilson, received by her husband from the estate of

[Durr, *et al.* v. Wilson, *et al.*]

George R. Clayton, belonged to said Amanda L. during her life and to her children in remainder. In this money the husband had no interest, and it was not to be liable for his contracts or engagements, and was not capable of being alienated, that is, so placed as that the remaindermen should be deprived of it, by the husband of the said Amanda or otherwise than by the decree of a court of equity, and then only for the support and sustenance of the life tenants. He had no right to place upon the money any trusts or limitations which the will had not placed on it, and when he substituted the land for the money, he had no right to include in the deed to the land powers of disposition thereof, which did not exist in reference to the money. In the deed to Sayre he not only included all the trusts and limitations contained in the will, but he went further. He provided for the alienation of the land, a thing which was expressly prohibited by the will, and he provided for this alienation without regard to the rights of the remaindermen, having regard, it would seem, to the wishes of the life tenant and himself. Under the will the trust estate was the property of his wife and children. By the will it could not be disposed of. By the trust deed he so arranged matters that the trust estate could be disposed of by the consent of the wife alone, without regard to the wishes of the remaindermen, his children. This result was accomplished.—*Coleman v. Smith*, 55 Ala. 377 ; *Loeb v. McCullough*, 78 Ala. 533 ; *Turner v. Kelly*, 70 Ala. 85 ; *Pope v. Pickett*, 65 Ala. 487 ; *Pickett v. Pope*, 74 Ala. 122 ; *Goodman v. Winter*, 64 Ala. 430. Every person who bought any of the lands mentioned in the deed of Wilson to Sayre was chargeable with notice in the said deed given, that the money, the consideration of the deed, was derived from the estate of George R. Clayton, and was governed by the provisions of said will, which gave the appellants a remainder in the said property, after the death of Amanda L. Wilson.

2. It is insisted on the part of the appellants that the appellee must take the deed with all of its conditions or not at all. In other words, that the remaindermen took the property in the trust deed, encumbered with the right and power of the trustee to sell, and that they must be held to the provisions of the deed, or they must be relegated to their rights to have reimbursement

out of the estate of Joseph W. Wilson. This doctrine is repudiated, so far as transactions of this kind are concerned, in the cases of *Coleman v. Smith*, 55 Ala. 377, and *Loeb v. McCullough*, 78 Ala. 533. The land being substituted for the money, the wife had the right to its use during her life, and upon her death, the remaindermen were entitled to the whole of the land.

BRICKELL, C. J.—George R. Clayton, a resident of the State of Georgia, died leaving a last will and testament, by which he devised to his sons and daughters certain real estate situate in the county of Montgomery in this State, to be divided between them. The will was admitted to probate in that county on the 3d day of November, 1846. The interests devised to his sons were without any limitation ; but as to the portions devised to the daughters the will contained the following provisions : "Whenever the parts or shares of my children shall have been set off, allotted or ascertained, it is my will and desire that my daughters, Caroline, Mildred, and Amanda, have a life estate in the respective shares falling to them, and the remainder to their children, respectively, upon the determination of such life estate. It is, moreover, my will that such several life estates as are hereby given shall in no event be subject to any debts or contracts of their respective husbands, or capable of being alienated by their husbands, or in any manner than by a decree of a court of equity, and then for the necessary support and maintenance of my daughters or either of them. The husbands of my daughters, though not appointed as executors, are hereby desired to aid and assist their respective wives in the performance of their duties and trusts imposed ; and finally I enjoin it most solemnly upon one and all of my children and sons-in-law that the distribution of my property as hereinbefore directed, be made harmoniously and equitable as specified, and that the settlement of the lots and shares of my daughters upon them during their respective lives, and then to their respective children, be carried out in good faith, that my parental love and care for them be not thwarted." The land now the matter of controversy, was allotted in a partition between the devisees, to one of the sons, and was subsequently by him conveyed by warranty deed to Joseph

W. Wilson, who was the husband of Amanda Wilson, one of the daughters of the testator Clayton. It is conceded that Wilson paid for the land with his own money. On the 1st day of April, 1847, he conveyed the land to P. D. Sayre, as trustee. The consideration recited was $1,841, "received by me from P. A. Clayton, acting executor of the last will and testament of George R. Clayton, deceased, and which said sum of money belonging to my wife, Amanda L. Wilson, as her sole and separate estate under the last will and testament of the said George R. Clayton, proven and established in the Orphans Court of Montgomery county and recorded * * * * *, and which said sum of money has been applied by me to my own use," etc. The deed was upon the trust that Sayre should apply the rents, issues and profits *"unless disposed of under the power hereinafter given"* to the sole and separate use of Amanda L. Wilson during life, free from the debts of the husband, and upon her death *"if the said lot or parcel of land should not be sold under the power hereinafter specified,"* then to convey the land to such child or children and the descendants of such child or children as the said Amanda L. Wilson might have living at the time of her death, to be equally divided among such children; should she have more than one child living or the descendants of children living at her death, the descendants of any one child to take the portion to which its deceased ancestor would have been entitled had he or she lived until the death of the said Amanda L. Wilson.

The conveyance contained the following power of disposition: "And upon the further trust and confidence that the said Philemon D. Sayre shall and may at any time during the life of the said Amanda L. Wilson, by the direction and request of said Amanda L. Wilson, testified by any writing under her hand and seal, make sale or convey in exchange for or in lieu of other lands and property, any part or the whole of said lot or parcel of land hereby and herein conveyed, and sell said lot or parcel of land or any part thereof for such price or prices in money as to the said Amanda L. Wilson should or shall seem reasonable, and should said Philemon D. Sayre sell the whole or any part of said lot or parcel of land for money, then to invest the money arising from the sale of said lot or parcel of land in such other estate

or property as the said Amanda L. Wilson may by her writing and seal appoint and select; and should said Philemon D. Sayre exchange said lands for any other property or estate under the power herein granted, or purchase any other property or estate under said power, then to apply the rents, issues and profits of the estate or property so acquired to the same uses and trusts as he would apply rents, profits and issues of said lot or parcel of land hereby conveyed should the same not be sold or exchanged under the power given in this deed." And upon the trust that said Philemon D. Sayre shall, upon the written direction and request of the said Amanda L. Wilson, testified under her hand and seal, make sale of or exchange the estate or property acquired from or by or with said lot or parcel of land, or any part thereof, and reinvest the proceeds of the same as often as the said Amanda L. Wilson may, under the power and in the manner herein specified, select and appoint, the said Philemon D. Sayre paying the rents, issues and profits and gains of said lot or parcel of land to said Amanda L. Wilson, or paying rents, issues or profits of any other land, estate or profits which may be acquired under the power herein contained to the said Amanda L. Wilson during her natural life, her receipt being a sufficient acquittance and discharge to said Philemon D. Sayre for said rents, issues and profits.

Sayre died on the 28th day of April, 1852. Joseph W. Wilson was duly appointed as his successor by the chancery court. On the 29th day of May, 1869, said Wilson, the substituted trustee, and his wife the said Amanda, "in strict compliance with the terms of the trust deed conveyed the lot in controversy to Clayton Wilson with warranty by said Wilson." On May 31st, 1869, Clayton Wilson mortgaged the lot to the Montgomery Mutual Building and Loan Association to secure a debt contemporaneously contracted. The mortgage contained a power of sale, and authority to the mortgagee to purchase. It was duly foreclosed April 17th, 1871, and the mortgagee became the purchaser. Under proceedings afterwards had in the city court of Montgomery, the affairs of said Building and Loan Association were settled, and its assets ordered to be sold for distribution. Pursuant to said decree said lot was sold June 9th, 1890, and the complainants, John W. Durr and Judah T. Moses, became the purchasers for value.

The bill in this case was filed under the act of December 10th, 1892, to compel the determination of claims to real estate. Mrs. Amanda L. Wilson and her children and the children of one of her sons, who had died, were made defendants to the bill. Mrs. Wilson died pending the suit and it abated as to her. There were decrees *pro confesso* against all of the defendants except Eliza M. Williamson, who was a daughter of said Amanda L. Wilson. She answered the bill, setting up the trust in the will, and insisting that the consideration recited in the deed from Joseph W. Wilson to Sayre disclosed that the lot was conveyed in repayment of trust funds in which her mother, Amanda L. Wilson, had only a life estate, and that this fact impressed upon the land the trusts of the will in favor of said Amanda, as life tenant, and in favor of said Eliza, as one of the children of the said Amanda. After interposing this answer Mrs. Williamson died, and the cause was revived against her children who, on coming in through their guardian *ad litem*, adopted her answer. The court rendered a decree holding that the lot in controversy was impressed, as claimed in the answer, with the trusts of the will, and that the appellees were entitled thereto as remaindermen under the will.

No claim can be asserted by appellees to the lot other than under the trust deed from Joseph W. Wilson, for "it is admitted that Wilson paid for the land with his own money." No portion of the trust estate under the Clayton will entered into its purchase. In the absence of any investment of the trust funds in the purchase of the property, neither the life tenant nor the remaindermen had any lien whatever upon the property itself, and could not, of course, have compelled its conveyance. As to the trust funds which Wilson had used his liability was that of a mere debtor, and no trust could have been fastened by the life tenant nor remaindermen upon the lot.—*Farris v. Stoutz*, 78 Ala. 133; *Ellison v. Moses*, 95 Ala. 228; *Goldthwaite v. Ellison*, 99 Ala. 497; *Goldthwaite v. Janney*, 102 Ala. 44; *Milner v. Stanford*, 102 Ala. 280.

In *Farris v. Stoutz, supra,* where a pecuniary legacy had been converted, the court held that as the fund could not be traced into any property, the only remedy of the remaindermen was to file their claim as ordinary cred-

itors against the estate of the person who had converted the fund.

Joseph W. Wilson was absolute owner of the property, and as an incident of his absolute ownership had the right to dispose of it as his pleasure, interest or even caprice might dictate.—*Pope v. Wilson*, 7 Ala. 694; Burrill on Assignments, § 9. Having the absolute right of disposition, Wilson conveyed the property to Sayre, as trustee for Amanda L. Wilson, wife of the grantor, with remainder to such child or children and the descendants of such child or children as the said Amanda might have living at her death, etc. But the conveyance contained a power of disposition authorizing the trustee, by the written direction and request of said Amanda L. Wilson, to exchange or sell the lot, and in the event of a sale for money to reinvest the proceeds upon the same trusts declared in the deed; and it is declared that the rights of the remaindermen should attach only in the event that the lot should not be sold under said power of disposition. The power of sale was as much a constituent part of the deed of conveyance as any other of its terms, and when duly exercised by the trustee, as was the case in this instance, conveyed the entire legal and equitable estate to the purchaser. Holding under the deed and not otherwise, the beneficiaries must take according to its provisions. They cannot affirm provisions supposed to be beneficial to them and disaffirm others in the same instrument. The grant must be accepted or rejected in its entirety. It is not permissible to claim both under and against the conveyance.—*Dillon v. Parker*, 1 Swanston, 359 and notes; 2 Perry on Trusts, § 596; *Hatchett v. Blanton*, 72 Ala. 423, 433; *Sloan v. Frothingham*, 72 Ala. 589.

It is not insisted that the purchaser under the power was responsible for the application of the money according to the trusts. Both at common law and by statute (Code of 1886, § 1843), the person making payment to the trustee was relieved of all responsibility in this respect, unless such purchaser colluded with the trustee and knew of his intention to waste or mismanage the fund. Confessedly the present case does not fall within the exception.

There is nothing in the case of *Loeb v. McCullough*, 78 Ala. 533, in conflict with the views we have announced.

That case is not inconsistent with the authorities we have cited, which hold that a debtor like any other person may dispose of his property as he sees fit. That was a bill filed to foreclose a mortgage upon property conveyed by the husband to the wife through the intervention of a trustee ; and the question was whether, by the terms of the conveyance, the estate of the wife was statutory or equitable. In the opening sentence of the opinion it is declared that the deed was "absolute in terms." It contained no power of sale nor provision for reinvestment. It was also expressly held that the grantor intended to create a statutory separate estate and not an equitable one. In holding, therefore, that the mortgage was void under the statute, the court enforced the intention of the grantor as declared in the deed, and did not nullify it as is here attempted. In that case it required no elimination of any of the terms of the deed to reach the conclusion announced by the court, while in this case in order to sustain the contention of the appellees, we must eliminate absolutely from the deed the provision authorizing a sale and reinvestment. Such construction would result in making a contract which the grantor, having the full power of disposition of his property, had declined to make.

The decree of the city court was not in accordance with these views and must be reversed, and a decree here rendered that the complainants have a good and indefeasible estate in the land in dispute as against the defendants, and that the defendants have no right to nor estate therein. The costs of the court of chancery must be paid one-half by the adult defendants against whom decrees *pro confesso* were not rendered and one-half by the complainants. The costs of appeal in this court and in the chancery court must be paid by the adult appellees, litigating in the court of chancery.

Reversed and rendered.